IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC., | : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | |
| VIEWPOINT COMPUTER ANIMATION, INC., | : : : | NO. 08-534 |
| Defendant, | : : | |
| v. | : : | |
| 3COM CORP. AND CAPITAL 4, INC., | : : | |
| Third Party Defendants and Defendants on the Counterclaim. | : : | |

## MEMORANDUM

**Baylson, J.**                                                                                      **April 1, 2009**

      Presently before this Court is Third Party Defendant and Defendant on the Counterclaim 3Com Corporation's (hereinafter "3Com") Motion to Dismiss the Amended Counterclaim of Defendant Viewpoint Computer Animation, Inc. (hereinafter "Viewpoint" or "Defendant") for failure to state a claim under Fed. R. Civ. P. 12(b)(6). This dispute arises from a series of contracts entered into by Plaintiff De Lage Landen Financial Services (hereinafter "DLL" or "Plaintiff"), Viewpoint, and third parties Capital 4, Inc. (hereinafter "Capital 4") and 3Com for the provision of telephone services and equipment. For the following reasons, this Court will deny in part and grant in part, with leave to amend.

I.      **Factual Background**

     A.      **Allegations Relevant to All Parties**

The facts of this case were previously outlined in some detail in the Memorandum and Order of this Court, (Doc. No. 40), which granted in part and denied in part DLL's motion to dismiss Viewpoint's Counterclaim.  See De Lage Landen Fin. Servs. v. Viewpoint Computer Animation, Inc., 2009 WL 678635, at *1-4 (E.D. Pa. March 11, 2009).  Therefore this Court will only review the specific facts relevant to 3Com's Motion at issue here.  In summary, DLL initially sued Viewpoint for breach of a "Rental Agreement,"[1] entered into between August and October 2005 by DLL and Viewpoint, under which DLL allegedly agreed to lease telephone equipment to Viewpoint.  (Compl. ¶¶ 6, 18; Countercl. ¶ 92-93).  Before entering into the Rental Agreement, Viewpoint contracted for the provision of telephone services with Capital 4 pursuant to a "Customer Agreement."  (Compl. ¶ 9).  Viewpoint alleges that these Agreements were part of a program called the Power of $Zero, which provided telecommunication services at a fixed rate for a number of years.  (Countercl. ¶¶ 55(a)).

Under those Agreements, Viewpoint only made payments to DLL, which would then "pass through" part of the payments to Capital 4 for the services Capital 4 provided to Viewpoint.  (Compl. ¶¶ 10-11).  Viewpoint alleges that Capital 4 did not itself provide the telecommunications services but instead contracted with licensed service providers through Public Access Service Agreements.  (Countercl. ¶¶ 54(h); 86(l)).

However, by letter dated September 15, 2007, Capital 4 informed its customers that it

---

[1] The Rental Agreement is sometimes referred to as the Funding Agreement in the various documents before the Court.

could no longer meet its obligations under the Customer Agreement, including the provision of telecommunications services. (Countercl. ¶ 128; Ex. 16). Viewpoint then stopped making any payments to DLL. (Compl. ¶ 14). Viewpoint alleges that the letter "effectively canceled Defendants' obligations under the contract . . . 'for good cause'—telephone services would no longer be provided by Capital 4 Inc., or the 'Power of $Zero Partnership.'" (Countercl. ¶ 130). DLL sued for breach of contract and unjust enrichment, asserting that Viewpoint was obligated to make its payments to DLL despite the loss of services provided by Capital 4. (Compl. ¶¶ 17-20).

In response to DLL's Complaint, Viewpoint filed an Amended Answer, Affirmative Defenses, Amended Counterclaim, and Third Party Complaint (hereinafter "Counterclaim") (Doc. No. 14) and joined Capital 4 and 3Com as parties to the litigation. Viewpoint's central allegation is that its Rental Agreement with DLL was only one of a complex series of contracts between itself and the Power of $Zero Partnership (hereinafter "Partnership"), which is comprised of DLL, Capital 4, and 3Com. Based on both the language of the Customer Agreement and on the relationships and contracts among members of the Partnership, Viewpoint argues that its obligation to pay DLL was extinguished when the Partnership stopped providing telecommunications services.[2] Viewpoint also asserts that members of the Partnership made

---

[2]Viewpoint has also alleged that DLL, Capital 4, and 3Com have engaged in similar fraudulent acts affecting at least eighteen other businesses. (Countercl. ¶ 148). Likewise, DLL has filed similar suits to the suit filed against Viewpoint. Those suits, which have been assigned to the undersigned, allege that additional businesses violated their respective Rental Agreements under the same 3Com Power of $Zero Solution at issue here. See De Lage Landen Fin. Servs. v. Rasa Floors, LP, 08-cv-0533 (DLL's motion to dismiss counterclaims granted in part and denied in part); De Lage Landen Fin. Servs. v. Grayson County Coll., 08-cv-0532 (settled); De Lage Landen Fin. Servs. v. Barton Nelson, Inc., 08-cv-0530 (motion to dismiss counterclaims denied and case subsequently settled); De Lage Landen Fin. Servs. v. Mid-America Healthcare, LP, 08-

fraudulent misrepresentations regarding the relationship of the Customer and Rental Agreements and Viewpoint's obligations under these contracts. (Countercl. ¶¶ 218-235).

The Customer Agreement between Viewpoint and Capital 4 expressly incorporated an eBrochure found on the Power of $Zero website titled "How does the 3Com Power of $Zero Solution Work?" (Countercl. ¶¶ 70-72; Ex. 1 pp. 4-7). Viewpoint alleges that the eBrochure more specifically describes the Power of $Zero Program (hereinafter "Program") and the Partnership. (Countercl. ¶¶ 70-72). One provision of the eBrochure relevant to the instant Motion described termination of the Customer Agreement by the customer as follows:

> ¶ 32:   Can I cancel the 3Com Power of $Zero Customer Agreement in its entirety?
>
> Yes. You have the option to cancel the Agreement at any time. If We fail to perform and good cause ("Good Cause") exists. You may cancel the 3Com Power of $Zero Customer Agreement.
>
> . . . .
>
> ¶ 34:   What happens to my obligation under the Funding Agreement if the 3Com Power of Zero Customer Agreement is terminated for Good Cause?
>
> If the Agreement is properly terminated for Good Cause, You grant Us Power of Attorney to pay, on a monthly basis, on Your behalf, damages in an amount sufficient to satisfy and discharge Your remaining payment obligations to any third-party funding source that has advanced funds under a Funding Agreement. We will pay these damages, even though You are not making Monthly Payments to Us.

(Countercl. Ex. 1 p. 6).

---

cv-1264 (motion to dismiss for lack of personal jurisdiction and improper venue denied and case subsequently settled).
    DLL also filed a suit against Capital 4, which is stayed pending the outcome of litigation between 3Com and Capital 4 that is pending in the Southern District of New York. See De Lage Landen Fin. Servs. v. Capital 4, Inc., 07-cv-3262 (E.D. Pa.) (Yohn, J.). The suit between 3Com and Capital 4 is more fully discussed below.

B.     **Allegations Concerning 3Com**

Viewpoint claims that 3Com manufactures, wholesales, or delivers telephone systems targeted to be used by small businesses. (Countercl. ¶ 47). One of 3Com's alleged roles in the Power of $Zero Partnership was to provide new telephone equipment to Partnership customers if they chose the free equipment option. (Countercl. ¶ 54(d)). Viewpoint claims that on January 31, 2005, Capital 4 entered into a "Strategic Alliance Agreement" with 3Com, under which Capital 4 would promote and exclusively use 3Com communication equipment in the Program, and 3Com would assist Capital 4 in marketing and selling the Program. (Countercl. ¶ 59-60; Ex. 5).[3] Viewpoint asserts that 3Com and Capital 4 entered into additional contracts that furthered their involvement in the alleged Partnership and imposed on 3Com certain responsibilities with respect to Program customers. For the purposes of this Motion, three of these contracts are particularly important and are more fully described below.

1.     Operations Agreement

First, on November 10, 2006, Capital 4 and 3Com entered into an "Operations Agreement." (Countercl. Ex. 3). The Operations Agreement outlined the parties' rights and obligations related to the Program. This Agreement included a provision entitled the "Go Dark Solution," which addressed the possibility of Capital 4 being unable to honor its contractual

---

[3]Viewpoint has attached this agreement, and the other agreements discussed in the following paragraphs, as exhibits to its Counterclaim. 3Com has not challenged the authenticity of those agreements. A district court may consider a "document integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted); see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1195 (3d Cir. 1993) (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"). Therefore, this Court will consider these documents attached to the Counterclaim.

obligations. The provision first states Capital 4's obligation to "make commercially reasonable efforts" to fulfill its obligations under the Customer Agreements "[i]n order to further protect the POZ Program by preventing the interruption, temporary suspension or cancellation of services provided by Public Access Assets Service[4] providers to POZ Customers." (Countercl. Ex. 3 p. 10). However if Capital 4 is unable to meet the Customer Agreement obligations, the Operations Agreement contemplates the following:

> ¶ 4.3.3   3Com and Capital 4 shall cooperate with one another to implement the following actions immediately following commercially reasonable indications: (i) of Capital 4's intent to declare itself insolvent; or (ii) that Capital 4 is otherwise temporarily unable to honor its obligations under the existing POZ™ Customer Agreements . . .
>
> (d)   3Com shall assume all of the obligations of any and all Public Access Assets Service Agreements entered into by Capital 4 in connection with 3Com Power of $Zero Customer Agreements. . . .

(Countercl. Ex. 3 p. 12). Therefore, Viewpoint asserts that under the Operations Agreement, 3Com was obligated to assume the Public Access Service Agreements entered into by Capital 4 to provide telecommunications services to its customers if Capital 4 was unable to honor its obligations under those service agreements. As a result, Viewpoint alleges that it was a third party beneficiary of the Operations Agreement. (Countercl. ¶ 121).

Notably, the Operations Agreement contained a non-assignability clause as well as an inurement clause. (Countercl. Ex. 3 p. 14 ¶ 7.1). Furthermore, the Operations Agreement

---

[4]Viewpoint asserts that the word "Assets" in the term "Public Access Assets Service" was mistakenly used because the word was never defined in the Agreement and that the parties intended the contract to say "Public Access Service," which is defined in the Agreement. (Def.'s Memo. Law Opp'n 3Com's Mot. Dismiss 9 n.6).

provided for mutual indemnification and limited liability between the parties to the Agreement. (Countercl. Ex. 3 p. 13 ¶¶ 5.1, 5.2). The Operations Agreement contained a New York choice-of-law clause. (Countercl. Ex. 3 p. 14 ¶ 7.2). These clauses survived expiration or termination of the Operations Agreement. (Countercl. Ex. 3 p. 12 ¶ 4.5).

       2.    Promissory Notes

Beginning on August 6, 2007, 3Com lent Capital 4 certain sums of money through the issuance of promissory notes. (Countercl. Ex. 15). Between August 6 and August 16, 2007, 3Com issued seven notes totaling $600,000 to Capital 4. Each note stated: "<u>Use of Proceeds</u>. Borrower has informed Lender that it intends to use the proceeds of this Note to pay the dial-tone connection fees it owes to third party providers on behalf of its customers." (Countercl. Ex. 15 pp. 4, 9, 14, 19, 24, 29, 34 ¶ 10).

Viewpoint alleges that these promissory notes in part constitute "commercially reasonable indications" that Capital 4 was unable to honor its existing Customer Agreements, thereby triggering the Go Dark Solution provision in the Operations Agreement. (Def.'s Memo. Law Opp'n 3Com's Mot. Dismiss 9).

       3.    First Contract Amendment to Operations Agreement

One day after issuing the first promissory note, on August 7, 2007, Capital 4 and 3Com entered into another agreement called the First Contract Amendment, revising the Operations Agreement's Go Dark Solution provision. (Countercl. Ex. 19). The Amendment made the following relevant changes to ¶ 4.3:

> ¶ 4.3.3    3Com and Capital 4 shall cooperate with one another to implement the following actions immediately, and without opportunity to cure, following commercially reasonable indications: (i) of Capital

>   4's intent to declare itself insolvent; or (ii) that Capital 4 is otherwise temporarily unable to honor its obligations under the existing POZ™ Customer Agreements . . .
>
>   (c)   Upon request by 3Com, Capital 4 shall assign to 3Com all rights and obligations of Capital under those Capital 4 POZ Customer Agreements which 3Com, in its sole discretion, believe may have a Material Adverse Effect on 3Com if such Customer Agreements are not assigned to 3Com.
>
>   . . . .
>
>   (e)   3Com shall assume all of the obligations of any and all Public Access Service commitments entered into by Capital 4 in connection with those Capital 4 Power of $Zero Customer Agreements assigned to 3Com pursuant to Section 4.3.3(c) above. . . .

(Countercl. Ex. 19 pp. 2-3). These provisions appear to give 3Com discretion in assuming Capital 4's Customer Agreements and also provide that 3Com will assume the Public Access Service Agreements if it elects to assume the Customer Agreements. In contrast, the original Go Dark Solution provision in the Operations Agreement provided that 3Com "shall assume" the Public Access Service Agreements if certain conditions occurred; it did not mention assumption or assignment of the Customer Agreements.

Viewpoint alleges that it was a third party beneficiary of this modified contract as well. (Countercl. ¶ 124). Viewpoint claims that 3Com modified the Operations Agreement after learning of the "dire financial condition" of Capital 4. (Countercl. ¶ 122). Viewpoint further alleges that on August 20, 2007, 3Com invoked the Go Dark Solution provision of the First Contract Amendment but failed to pay the telecommunications service providers, thereby jeopardizing Viewpoint's telephone and internet service. (Countercl. ¶ 127).

C.    **Lawsuit Between 3Com and Capital 4**

On October 9, 2007, 3Com filed suit against Capital 4 in the Southern District of New York.  See 3Com Corp. v. Capital 4, Inc., et al., S.D.N.Y. 07-cv-8707.  Viewpoint asserts that in that suit 3Com alleged that it became aware in late 2005 or early 2006 that Capital 4 had cash flow problems "'based on Capital 4's prior need to have 3Com extend it credit.'"  (Def.'s Memo. 9 n.5 (quoting 3Com v. Capital 4, Compl. ¶¶ 31, 32)).  Viewpoint further alleges that 3Com alleged in that suit that 3Com learned in late July 2007 that Capital 4 was delinquent in paying its Public Access Service providers. (Id.)  Viewpoint relies on these allegations, which alleged that Capital 4 was experiencing financial difficulty and 3Com was aware of those problems, as additional evidence that the Go Dark Solution provision was triggered.  (Def.'s Memo. 9 n.5).

Viewpoint asserts that Capital 4 filed a counterclaim against 3Com alleging that "'3Com represented to Capital 4 that it would partner with Capital 4 to further develop and grow the Power of $Zero program'" and asserting a partnership between 3Com and Capital 4.  (Countercl. ¶ 140 (quoting 3Com v. Capital 4, Countercl. ¶ 16) (emphasis in original)).  In addition, Viewpoint asserts that Capital 4's counterclaim alleged 3Com was interested in eventually taking full control of the Program and intended to take full control on April 1, 2007. (Countercl. ¶ 140(e), (f)).

D.    **Procedural History**

DLL filed its Complaint against Viewpoint for breach of contract and unjust enrichment on February 1, 2008  (Doc. No. 1).  Viewpoint filed an Answer and Counterclaim against DLL and Capital 4 on May 16, 2008 (Doc. No. 6), and DLL moved to dismiss the counterclaims (Doc. No. 9).  Viewpoint filed an Amended Answer, Third Party Complaint, and Counterclaim against

DLL, Capital 4, and 3Com on July 14, 2008 (Doc. No. 14).  As such, this Court denied DLL's initial Motion to Dismiss as moot (Doc. No. 17).  In addition, on September 30, 2008, Viewpoint filed a Motion for Joinder to join Capital 4 and 3Com as Third Party Defendants and Additional Counterclaim Defendants (Doc. No. 23), which this Court granted on October 22, 2008 (Doc. No. 27).

DLL filed a Motion to Dismiss the amended counterclaims against it on August 15, 2008 (Doc. No. 19).  In a Memorandum and Order dated March 11, 2009, this Court denied in part and granted in part, with leave to amend, DLL's motion to dismiss (Doc. 40).

Viewpoint's Amended Counterclaim included the following claims against 3Com:

| | |
|---|---|
| Count II | Indemnification |
| Count IV | Breach of Contract |
| Counts V and VI | Third Party Beneficiary Claims |
| Count X | Conspiracy to Commit Fraud |
| Count XI | Violation of Pennsylvania Consumer Protection Law |
| Count XII | Violation of Texas Consumer Protection Law |
| Count XIII | Violation of RICO |

3Com has now moved to dismiss all of the claims brought against it (Doc. 31).

## II.    Parties' Arguments

### A.    3Com's Motion to Dismiss

3Com asserts that Viewpoint's claims for indemnification and breach of contract must be dismissed because 3Com did not assume, and is not otherwise responsible for, Capital 4's obligations to Viewpoint under the Customer Agreement.  Therefore, 3Com argues it cannot be liable for Capital 4's failure to pay the monthly installments to DLL under the Rental Agreement when Viewpoint allegedly cancelled the Customer Agreement for good cause.  3Com emphasizes that the Go Dark Solution provision in the First Contract Amendment gave it discretion to

assume Capital 4's obligations; that provision, which 3Coms argues was in effect at the time Viewpoint cancelled the Customer Agreement, did not create an obligation to assume Capital 4's responsibilities.

3Com also argues that Viewpoint was not a third party beneficiary to either the Operations Agreement or the First Contract Amendment because 3Com and Capital 4 did not intend to create any third party rights to enforce those contracts. 3Com cites the presence of non-assignability and inurement clauses in both the Operations Agreement and the Amendment as evidence of the parties' intent to avoid creating a third party beneficiary.

3Com claims that under Pennsylvania Consumer Protection Law, Viewpoint lacks standing to pursue a claim based on the statutory language. 3Com further asserts that Viewpoint did not sufficiently allege that 3Com engaged in any tortious acts for purposes of both the conspiracy and consumer protection law claims. 3Com argues that it was not the party that made any of the alleged misrepresentations to Viewpoint and that Viewpoint could not have reasonably relied on any representations by 3Com because Viewpoint specifically disclaimed reliance on extra-contractual statements by other parties in an integration clause found in both the Customer and Rental Agreements. 3Com also contends that Viewpoint did not allege the conspiracy to commit fraud claim with the required specificity. Similarly, with regards to the RICO claim, 3Com argues that Viewpoint did not sufficiently plead with the requisite specificity the predicate acts 3Com engaged in or the damages Viewpoint suffered as a result. Therefore, 3Com requests that all counterclaims against it be dismissed.

      **B.**     **Viewpoint's Response**

Viewpoint responds that the Go Dark Solution provision in both the Operations

Agreement and First Contract Amendment required 3Com to assume Capital 4's obligations to Viewpoint under the Customer Agreement.[5]  Viewpoint reasons that the Go Dark Solution provision was triggered by commercially reasonable indications of Capital 4's inability to honor its commitments and that 3Com was aware of that inability, as evidenced by the promissory notes and the allegations in the lawsuit between 3Com and Capital 4.  Thus, because 3Com assumed the obligations of Capital 4, Viewpoint claims it can hold 3Com liable for failing to pay monthly installments to DLL as provided for in the Customer Agreement's good cause termination provision.

Viewpoint further contends that it was a third party beneficiary to both the Operations Agreement and the First Contract Amendment and thus possessed a right to enforce 3Com's obligations under those agreements.  Viewpoint asserts that the language of both versions of the Go Dark Solution provision indicates the parties' intent to create third party beneficiaries and their anticipation of claims being brought by those parties.  Viewpoint emphasizes that the Go Dark Solution created obligations between 3Com and Capital 4 specifically to ensure that services to the customers were not interrupted.  Thus Viewpoint contends that provision was intended for the benefit of the customers such as Viewpoint.

Viewpoint concedes that it cannot assert a Pennsylvania Consumer Protection Law claim. With respect to the Texas consumer protection law and conspiracy claims, Viewpoint responds that it has sufficiently pled an underlying tortious act, namely that a member of the Power of $Zero Partnership engaged in fraudulent conduct on which Viewpoint relied to its detriment.

---

[5]In its memorandum, Viewpoint admits that it is unclear which version of the Go Dark Solution is applicable here, but argues that this factual dispute provides another reason for denying this Motion and allowing discovery to take place.

Viewpoint asserts that it may hold 3Com liable for fraudulent misrepresentations made by other members of the alleged Partnership. Finally, Viewpoint argues that it has adequately pled both the predicate acts and damages under its RICO claim. Thus, Viewpoint asserts that its counterclaims against 3Com should not be dismissed.

### III.     Legal Standards

#### A.     Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

#### B.     Standard of Review

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). The motion will be granted only when it is certain that no relief could be granted under any set of facts that plaintiff could prove. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to state a valid complaint a plaintiff must make a "showing" that is more than just a blanket assertion that he is entitled to relief. Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The Supreme Court has also cautioned "that without some factual allegation in a complaint, a claimant cannot satisfy the

requirement that he or she provide not only 'fair notice' but also 'grounds' on which the claim rests." Id. (citing Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 n.3 (2007)).

Furthermore, any allegations of fraud must comply with the standard set out under Federal Rule of Civil Procedure 9(b), which provides that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This requirement of particularity means a plaintiff must plead the circumstances surrounding the alleged fraud in order to put the defendant on notice of the precise misconduct at issue. See Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).

## IV. Discussion

In this case, Viewpoint alleges claims against 3Com that are highly similar to claims alleged by a defendant in another case involving 3Com and pending before the undersigned, De Lage Landen Fin. Servs. v. Rasa Floors, LP, 08-cv-0533. Both Viewpoint and the defendant in that case, Rasa, are represented by the same counsel and pled similar facts. Furthermore, 3Com moved to dismiss both Viewpoint and Rasa's claims on similar grounds. As such, the claims and legal arguments made in Rasa are nearly identical to those made in the instant case. This Court issued an opinion in Rasa, dated March 31, 2009, in which it granted in part and denied in part 3Com's motion to dismiss (08-cv-0533, Doc. No. 64). Because the legal arguments are highly similar, this Court will rely on its decision in Rasa to determine the Motion in the instant case.

### A. Indemnification and Breach of Contract (Counts II and IV)

As explained in Rasa, Viewpoint has presented sufficient facts, which, if true, support a claim for both indemnification and breach of contract. Whether 3Com did in fact assume Capital 4's contractual obligations and which version of the Go Dark Solution was applicable to

Viewpoint's situation are questions of fact on which discovery is necessary. The Motion to Dismiss is therefore denied with respect to the indemnification and breach of contract claims.

      B.      **Third Party Beneficiary Claims (Counts V and VI)**

The Court's reasoning on the third party beneficiary claim in <u>Rasa</u> also applies in the instant case. Viewpoint has alleged sufficient facts, which this Court must accept as true for purposes of this Motion, that it was an intended beneficiary of the Operations Agreement and First Contract Amendment. Issues related to these contracts requires further discovery, and the Motion to Dismiss is thus denied with respect to the third party beneficiary claims.

      C.      **Violation of Pennsylvania Consumer Protection Law (Count XI)**

Viewpoint concedes that this count should be dismissed, since it purchased or leased the goods or services for business purposes, not the personal, family, or household purposes protected by the statute. 73 P.S. § 201-9.2.

      D.      **Violation of Texas Consumer Protection Law (Count XII)**

As explained in <u>Rasa</u>, Viewpoint has alleged sufficient facts that the Partnership, of which it claims 3Com is a member, made certain representations to Viewpoint that it in turn relied upon to support a Texas Deceptive Trade Practices Act claim. This claim is not barred by the integration clause in the Customer Agreement at this stage, since courts have relied on agency theory to support a claim under the Act. Based on Viewpoint's allegations regarding the Partnership, this Court will allow Viewpoint's claim against 3Com for violation of Texas consumer protection law to go forward.

      E.      **Conspiracy to Commit Fraud (Count X)**

The Court's analysis of the conspiracy claim in <u>Rasa</u> applies here. Viewpoint has alleged

sufficient facts that 3Com was a member of the Partnership, which made the fraudulent misrepresentations to Viewpoint that comprised the necessary predicate act to allege a conspiracy.

However this Court grants leave to amend the conspiracy claim to allege malice or intent to injure as required under Pennsylvania conspiracy law.

### F.     Violation of RICO (Count XIII)

Finally, as the Court stated in <u>Rasa</u>, it is allowing Viewpoint to replead the RICO claim and file a RICO case statement, as described in the accompanying order.

### V.     Conclusion

For the reasons stated above and more fully described in this Court's Memorandum deciding 3Com's Motion to Dismiss in <u>Rasa</u>, this Court will grant in part and deny in part with leave to amend.

The Court issued an Order on March 31, 2009 to this effect (Doc. No. 42).

BY THE COURT:

/s/ Michael M. Baylson

Michael M. Baylson, U.S.D.J.

O:\Shelley\08-534 DeLage v. Viewpoint\3Com MTD FINAL.wpd