IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| RASA FLOORS, LP | : | NO. 08-533 |

| | | |
|---|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| VIEWPOINT COMPUTER ANIMATION, INC., et al. | : | NO. 08-534 |

**MEMORANDUM AND ORDER AWARDING PLAINTIFF'S DAMAGES FOR PRINCIPAL AND INTEREST AND RULING ON DEFENDANTS' LIABILITY FOR AND FURTHER PROCEDURES TO DETERMINE AMOUNT OF ATTORNEYS' FEES AND COSTS**

**Baylson, J.**                                                                                       **August 12, 2011**

In a Memorandum and Order dated June 24, 2011, the Court determined that Plaintiff ("DLL") was entitled to judgment in its favor on its claims against Defendants and third-party Defendant North Central Communications Corp. ("NCC") (collectively "Defendants"), and also that DLL was entitled to judgment in its favor as to Defendants' counterclaims against DLL. The Court directed the parties to discuss the amount of damages owing to DLL and required submissions by each party.

1.   DLL'S Damages as to Principal and Interest

The Court has now reviewed these submissions and is prepared to make an award of damages in favor of DLL and against Defendants, limited to principal and interest.[1] In reviewing the submission of DLL, including the affidavit of Stephen F. Majer, Jr., the Court concludes that the amount of Defendants' liability to DLL for principal and interest can be determined as a matter of law.[2]

DLL submitted periodic invoices to Defendants pursuant to the contract and there is no dispute that Defendants stopped making payment on those invoices at a certain point of time. Under the contract, DLL is entitled to interest on amounts due but unpaid. DLL set forth the calculations as to the amount of principal and interest due in Majer's initial affidavit. Upon motion of the Defendants to strike the affidavit because it was not clear whether it was made on personal knowledge, the Court entered an Order requiring that DLL submit a supplemental affidavit showing that Majer had personal knowledge of the amounts due and owing. The supplemental affidavit was filed on June 24, 2011 (ECF No. 257). The Court finds that the Majer affidavit accurately sets forth the amounts of principal and interest due in accordance with the contractual terms.

---

[1] The parties have proposed, and the Court has agreed, to consider DLL's damages as to principal and interest first, and it's Petition for Attorneys Fees subsequently. Therefore, this Memorandum and Order will initially rule on DLL's damages for principal and interest awarded because the Court found that Defendants had breached their contract with DLL. As noted below, the Court finds that principal and interest due is not subject to any factual dispute, but rather flows from the unambiguous terms of the contract between the parties, and thus can be determined under Rul 56 procedures as a matter of law.

[2] The Court has considered Defendants' Reply Brief filed August 12, 2011 but finds it only repeats prior arguments made by Defendants which the Court has rejected.

According to the Defendants, DLL may collect only for the portion of the monthly Lease Payments that was allocated to equipment, as opposed to telephone and internet services, and the "the customer service agreements, as incorporated into the lease agreements, contain the allocation of the monthly payments – all to telephone and interest access services, and nothing to equipment." [Defendants' Damages Submission at 6, 20-21, 37]. Such argument is without merit.

Defendants' argument rests upon their contention that the Pass Through Payment to Capital 4 "is not found in, or supported by, the lease agreement" and, therefore, can be explained only by interpreting the Lease Agreements to incorporate the terms of the POZ Customer Agreements. [Defendants' Damages Submission at 6, 20-21, 37]. However, the Court's July 28, 2011 Memorandum expressly rejected this "single contract" theory, stating:

> The Court finds it unnecessary to read the two contracts as one to explain the payments to Capital 4 as DLL's Lease Agreements specified that lease payments could "INCLUDE THE COST OF MAINTENANCE AND/OR SERVICE BEING PROVIDED BY THE SUPPLIER AND/OR MANUFACTURER[.]" Pl's App. Ex. C at § 7.

[Summary Judgment Opinion at 26].

Defendants' argument regarding apportionment between equipment and services repeats the affirmative defenses to liability that this Court has already rejected as legally insufficient, e.g., that Capital 4 overvalued the equipment and/or that the Defendants were told that the equipment was "free." As this Court held in its recent Summary Judgment Opinion: "the charges for services ... are not at issue in this case. It is undisputed that DLL eliminated the charges to Defendants for telephone and internet services and the Pass-Thur payments to Capital 4 when

3

Capital 4 ceased to provide telephone and internet services to Defendants." [Summary Judgment Opinion at 31]. The Court finds the undisputed facts establish that the Lease Payments DLL is attempting to collect relate to the amounts DLL actually funded.

Mr. Majer testified, without contradiction, that the Lease Payments were structured to pay back DLL for the amounts actually funded, pursuant to the invoices submitted by Capital 4, together with some profit for DLL. [5/5/10 H.T. at 29 (Majer)]. The "deferred maintenance" payment that was added to the equipment portion of the Lease Payments was passed along to Capital 4 for public access services and was eliminated when Capital 4 stopped providing those services. [*Id*. At 32]. DLL did not pre-fund, and is not attempting to collect, those deferred maintenance charges.

The Court rejects the Defendants' arguments that DLL's damages should be modified because DLL failed to file a separate notice of intent to accelerate the lease payments upon Defendants' cessation of making those payments. The Court finds that no such notice was necessary in view of Plaintiff's promptly filing this litigation. See Kingsly Compression, Inc. v. Mountain V Oil & Gas, Inc., 2010 WL 4929076 (W.D. Pa. 2010). In any event, the amounts are now due, even if acceleration was improper.

After reviewing the papers, the Court initially found one factual issue relating to an alleged payment by NCC. In its brief, NCC asserts that a payment was made in the amount of $1,728.19, which DLL failed to apply to its account. After Majer asserted, in a supplemental affidavit filed July 25, 2011 (ECF No. 260), that DLL's records do not show that this payment was received by DLL, the Court ascertained a possible issue of fact as to whether this payment was or was not made by NCC. The Court directed NCC to support its assertion with a copy of a

4

cancelled check or a wire confirmation showing that this payment of $1,728.19 was made by NCC and received by NCC.  On April 12, 2011, NCC filed a Notice of Compliance with the Court's Order, and an amended Affidavit by an NCC officer that its assertion was made in error and it did not make the alleged payment of $1,728.19.

The Court concludes that Plaintiff has appropriately documented, and Defendants have failed to show any genuine issue of fact concerning the amount due for principal and interest  The Court will therefore find that the amounts of principal and interest as calculated by DLL are the appropriate amounts for a money judgment in favor of DLL and against each Defendant, as stated in the attached Order.

    2.    <u>Final Judgment Under Rule 54(b) is Premature</u>

The Court has determined that final judgment pursuant to Rule 54(b), F.R. Civ. P. cannot be entered in a case of this nature until after attorneys fees and costs have been determined.  <u>See</u> <u>Ragan v. Tricounty Excavating, Inc.</u>, 62 F.3d 501, 505 (3d Cir. 1995) and <u>see</u> F. R. Civ. P. 54(d)(2)(A).  When, as in this case, the substantive law requires attorneys fees and costs to be proved as an element of contractual damages, attorneys fees and costs must be awarded prior to any final judgment under Rule 54(b).

    3.    <u>DLL Is Entitled to All of its Attorneys' Fees and Costs Through June 24, 2011</u>

The Court now having made a decision as to the amount of principal and interest to which DLL is entitled, and the Court having previously granted summary judgment in favor of DLL on the Defendants' counterclaims against DLL, the only remaining issue between DLL and Defendants is the amount of attorneys fees.  On this point, several legal issues have been raised:

a..     Whether fees incurred by DLL in prosecuting its claim for contractual damages are recoverable under the contract.  The Court finds an affirmative answer to this question to be undisputed under the contractual terms, and finds in DLL's favor on this issue.

b.      Whether the attorneys fees spent by DLL's counsel in defending against Defendants' counterclaims are recoverable against defendants.  The Court finds that this is an issue of contract interpretation for the Court to make as part of the summary judgment motion.  The counterclaims were without merit from the very beginning.  Defendants have attempted to raise every possible argument against the Defendants' liability for the contract damages, without any consideration of legal merit.  There was never a scintilla of evidence supporting the Defendants' counterclaim allegations.

As the Court pointed out at P.20 of its Memorandum filed July 28, 2011 in this case, granting summary judgment in favor of Plaintiff, the lease agreement in this case stated that Defendants' obligations to pay in full will not be "affected by any dispute, claim, counterclaim, ... which [Defendants] may have or assert against the supplier or the equipment manufacturer." Thus, Defendants were on notice that, to the extent they asserted counterclaims that were rejected, their liability for attorneys fees and costs may include DLL's expenses for litigating counterclaims.  The Court finds the Defendants' counterclaims were interposed for purposes of delay.  Even if the counterclaims had merit, defending against the counterclaims was part of the process of collection and DLL's attorneys fees are part of its contract damages.  Therefore, DLL is entitled to its attorneys fees and costs in defending against the counterclaims.  See Ambrose v. Citizens Nat'l Bank of Evans City, 5 A.3d 413 (Pa. Super. Ct. 2010); Potter v. American Bean & Grain Corp., 338 N.W.2d 22, 25 (Minn. Ct. App. 1986); Duryea v. Third Northwestern Nat'l

Bank of Minneapolis, 606 F.2d 823, 826 (8th Cir. 1979); Exchange Nat'l Bank of Chicago v. Daniels, 763 F.2d 286. 294 (7th Cir. 1985); Jaeger v. Canadian Bank of Commerce (California), 327 F.2d 743, 745 (9th Cir. 1964); Cooper v. Ficarra, 1998 WL 103301, *1-2 (E.D. Pa. Feb. 26 1998); Chrysler First Diversified Credit, Inc., 1989 WL 95366, *2 (E.D. Pa. Aug. 14, 1989); Penney v. First Nat'l Bank of Boston, 433 N.E.2d 901, 906 (Mass 1982).

        c.      Whether DLL's counsel's fees in defending against Defendants' attempt to have this case maintained as a class action would be recoverable under the contract is a more unique question. The Court finds in favor of DLL on this issue. Defendants' efforts to have this case certified as a class action were a classic example of "litigation overkill." Giving Defendants the opportunity Rule 23 required, the Court allowed an extended period of time for class action discovery and briefing, and held two days of hearings on this issue. As the Court noted at the time at the conclusion of the hearing, there was no evidence presented of any wrongdoing by DLL. The focus of the evidence was exclusively on third-party Defendant HP, and on defunct party Capital 4, Inc. Defendants' evidence and counterclaims fell far short of the standard required for a class action, for the reasons stated in the Court's Memorandum denying the class action. The Court concludes that the Defendants' efforts to have this case certified as a class action against DLL was, as the Court has similarly found as to the counterclaims, without any merit, interposed for delay, and that it is appropriate that the contractual obligation of Defendants to pay for DLL's attorneys fees must include DLL's attorneys fees and costs as to the class action litigation.

4. <u>Allocation of Attorneys Fees</u>

Therefore, the Court concludes that all of DLL's legal fees are recoverable as part of the contractual agreement in this case. As suggested by the parties, the Court will preliminarily decide the allocation of legal fees to which DLL is entitled. Having reviewed the briefs filed by the parties, the Court determines as follows:

    a. Each Defendant is individually liable for Plaintiff's costs of collection up until the date that all Defendants' counterclaims had been filed.

    b. As of the date all counterclaims were filed, Defendants are, from that point forward, jointly and severally liable for the legal fees and costs asserted by Defendants in prosecuting their counterclaims, including all proceedings in connection with their Motion for Class Action Certification through October 20, 2010, when the Court denied the class motion.

    c. Each Defendant shall be individually responsible for one-third of DLL's reasonable legal fees and expenses incurred from October 20, 2011 (the date on which this Court denied class certification) through June 24, 2011 (the date on which this Court granted DLL's Motion for Summary Judgment). These rulings are without prejudice to Plaintiff seeking joint and several liability for attorneys' fees and costs that may be warranted by proceedings after June 24, 2011.

5. <u>Procedure to Determine Attorneys Fees and Costs</u>

The Court has not yet decided whether this issue can be decided by the Court on submission of papers or must be submitted for a trial, and the possibility of a trial by jury. There do not appear to be any Supreme Court or Third Circuit precedential opinions deciding this issue. The Court has reviewed several decisions on the manner of determining attorneys' fees and costs

when they arise out of a breach of contract, as opposed to arising by a statutory fee-shifting provision.  See, e.g., E. Trading Co. v. Refco, Inc., 229 F.3d 617 (7th Cir. 2000); Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co., 129 F.3d 143 (D.C. Cir. 1997); McGuire v. Russell Miller, Inc., 1 F.3d 1306 (2d Cir. 1993); Resolution Trust Corp. v. Marshall, 939 F.2d 274 (5th Cir. 1991) (per curiam); Cf. Simplot v. Chevron Pipeline Co., 563 F.3d 1102 (10th Cir. 2009).  See also L.S.S. Realty Corp. v. Vanchlor Catalysts, LLD, No. 04-197, 2005 WL 638056 (E.D. Pa. Mar. 16, 2005) (Hart, Mag. J.); Dunkin' Donuts, Inc. v. Liu, Nos. 99-3344, 00-3666, 2002 WL 31375509 (E.D. Pa. Oct. 17, 2002) (Kelly, J.), aff'd 79 F. App'x 543 (3d Cir. 2003).  Under Pennsylvania law, see McMullen v. Kutz, 985 A.2d 769 (Pa. 2009); Boro Const. Inc. v. Ridley Sch. Dist., 992 A.2d 208 (Comm. C. 2010); Zembelli Fireworks Mfg. Co v. Wood, 2010 WL 4672351 (W.D. Pa. 2010).

The Court will require discussions between counsel as to the review of data on the subject of attorneys' fees and costs.  The Court will require Plaintiff to provide Defendants, on prompt request, reasonable details, as to the amounts actually paid by Plaintiff for counsel fees and costs.  Plaintiff may not rely exclusively on bills sent by its law firm.  Accounting shall be made for any discounts, special rates, or other fee arrangements that are relevant as to the overall actual cost to Plaintiff for attorneys fees and costs during the entirety of this litigation.

The Court requires that Plaintiff provide whatever further details it has not yet provided to Defendants, including any requests which Defendants make, within 14 days.  The Court will require any party that wishes to submit further material to do so no later than September 16, 2011.  After reviewing those materials, the Court will determine what further proceedings may be necessary, or whether the Court can proceed to make an award of attorneys' fees and costs based

on the written submissions. The parties may agree to refer the issue to a non-judicial resource for prompt resolution.

Following the Court's determination, the Court anticipates that it will enter a final judgment under Rule 54(b), without waiting for the conclusion of third-party proceedings between Defendants and third-party Defendant Hewlett Packard.

BY THE COURT:

Date: 08/15/2011         /s/ Michael M. Baylson
                         Michael M. Baylson, U.S.D.J.

A:\Delage v. Rasa Viewpoint Memo P's Damages Principal Int.wpd